IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY TATE, | Case No.: 1:09-cv-00770 JLT (PC) |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS AND FINDING SERVICE APPROPRIATE |
| vs. | AS TO OTHER CLAIMS |
| MATTHEW CATE, et al., | (Doc. 16) |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. By order filed October 9, 2009, the Court dismissed Plaintiff's complaint with leave to amend. (Doc. 9.) Now pending before the Court is Plaintiff's amended complaint, filed February 2, 2010. (Doc. 16.)

I.      **SCREENING**

        A.      **Screening Requirement**

The Court is required to review a case filed *in forma pauperis*. 28 U.S.C. § 1915(A)(a). The Court must review the complaint and dismiss the action if it is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2). If the Court determines the complaint fails to state a claim, leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment. Lopez v. Smith, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc).

**B.     Section 1983**

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To plead a § 1983 violation, the plaintiff must allege facts from which it may be inferred that (1) plaintiff was deprived of a federal right, and (2) the person who deprived plaintiff of that right acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). To warrant relief under § 1983, the plaintiff must allege and show that the defendants' acts or omissions caused the deprivation of the plaintiff's constitutionally protected rights. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Id. There must be an actual causal connection or link between the actions of each defendant and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Services, 436 U.S. 658, 691-92 (1978) (citing Rizzo v. Goode, 423 U.S. 362, 370-71(1976)).

**C.     Rule 8(a)**

Section 1983 complaints are governed by the notice pleading standard in Federal Rule of Civil Procedure 8(a), which provides in relevant part that:

> A pleading that states a claim for relief must contain:
>
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The Federal Rules of Civil Procedure adopt a flexible pleading policy. Nevertheless, a complaint must give fair notice and state the elements of the plaintiff's claim plainly and succinctly. See Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In other words, the plaintiff is required to give the defendants fair notice of what constitutes the plaintiff's claim and the grounds upon which it rests. Jones v. Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).  Although a complaint need not outline all the elements of a claim, there "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Twombly, 550 U.S. at 570).  Vague and conclusory allegations are insufficient to state a claim under § 1983.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II.   THE AMENDED COMPLAINT

Plaintiff alleges the following in his amended complaint.  Plaintiff suffers from chronic chest pain and breathing complications.  As early as January 2007, Plaintiff received treatment for these symptoms from Defendant Shortnacy, a nurse at Pleasant Valley State Prison ("PVSP").  However, due to the inadequacy of the prison's medical equipment, Defendant Shortnacy was unable to discover any serious medical problem with Plaintiff.  Each time Plaintiff was seen by Defendant Shortnacy, Plaintiff was simply given a medical lay-in slip.[1]  In addition, according to Plaintiff, Defendant Shortnacy failed to schedule any follow-up appointments for Plaintiff to see a doctor.  (Doc. 16 at 5, 18-42.[2])

Plaintiff eventually complained to the Mens Advisory Counsel ("MAC") about his inability to see a doctor.  The MAC brought the issue to the attention of Defendant Fogal, who in turn spoke with Defendant Villasayne about Plaintiff.  Defendant Villasayne is the patient care provider for Plaintiff's housing yard and is the one person who is authorized to prescribe medication and recommend that prisoners receive treatment from doctors outside the prison.  Defendant Villasayne allegedly told Defendant Fogal that he had heard of an incident involving Plaintiff and another prison doctor, and as a result, he was now too intimidated to treat Plaintiff.  (Doc. 16 at 79-84.)

On January 25, 2007, Plaintiff had an especially difficult time breathing and was forced to lay on the ground.  Prison officials were notified, but when Defendant Fogal arrived at the scene, he simply

---

[1] Medical lay-in slips confine a prisoner to his cell out of concern for the prisoner's health condition.  The prisoner may leave his cell for showers.  (Doc. 16 at 79.)

[2] The Court cites to the pages of the amended complaint as they appear on CM/ECF.

stood-by without aiding Plaintiff. Plaintiff was eventually taken to the medical clinic where he quickly recovered. Defendant Fogal became annoyed, stating: "After all this there was nothing wrong with you!" Thereafter, according to Plaintiff, Defendant Fogal "manifested a plan" to confine Plaintiff to his cell using medical lay-in slips. As a result, Plaintiff was confined to his cell and denied privileges such as access to the phone, canteen, and exercise yard. (Doc. 16 at 76.)

Plaintiff suffered yet another episode of breathing complications on October 1, 2007. Plaintiff reported to the prison medical clinic and was examined by Defendant O'Brien. Defendant O'Brien failed to properly diagnose Plaintiff and ordered Plaintiff to return to his cell. As he walked back to his cell, Plaintiff suffered another respiratory flare-up and fell to the ground. A prison official immediately summoned medical staff. However, when Defendant O'Brien arrived at the scene, she told the surrounding prison officials that Plaintiff was merely pretending to be ill. Plaintiff was therefore left to suffer on the ground for approximately eight minutes. Plaintiff was eventually taken back to the prison medical clinic, where Defendant O'Brien conducted a painful medical examination of Plaintiff. (Doc. 16 at 43-53.)

Because Plaintiff was accused of merely pretending to be ill, he was later charged with a disciplinary violation for "manipulating prison staff." On or around November 2, 2007, Plaintiff appeared for the disciplinary hearing regarding the matter. Defendant McCoy presided over the disciplinary hearing. According to Plaintiff, Defendant McCoy rushed the proceedings and denied Plaintiff the opportunity to present evidence on his own behalf. As a result, Plaintiff was found guilty of the disciplinary violation and was assessed a 30-day forfeiture of credits for a Division F-3 Offense. (Doc. 16 at 43, 70-74.)

Plaintiff filed an inmate grievance against Defendant O'Brien regarding the defendant's failure to provide Plaintiff medical care. Plaintiff's grievance was partially granted by Defendant George at the first level of review, partially granted by Defendant Yates at the second level of review, and denied by Appeals Branch Chief Grannis at the director's level. Defendant O'Brien became aware of Plaintiff's grievance and grew "vindictive." As retaliation, Defendant O'Brien tampered with Plaintiff's blood pressure medication, tampered with Plaintiff's medical records, reduced the dosage of Plaintiff's pain medication, and interfered with Plaintiff's ability to see a doctor. (Doc. 16 at 44-69.)

On December 5, 2007, Plaintiff was examined by an outside physician. The physician discovered that Plaintiff suffers from extensive coronary artery disease. As treatment, the physician conducted a stenting of Plaintiff's left anterior coronary artery. Nevertheless, Plaintiff continues to have difficulties breathing and must take nitroglycerin daily in order to perform basic functions such as walking. (Doc. 16 at 5, 14-15.)

Lastly, on March 26, 2008, Plaintiff suffered another flare-up involving chest pain and breathing complications. Plaintiff asked a prison official if he could see a doctor to receive a breathing treatment. However, rather than notify a doctor, the prison official relayed Plaintiff's request for treatment to Defendant Fogal. Defendant Fogal, in turn, simply ignored Plaintiff's request and instead issued an order directing Plaintiff to return to his cell for lock-up. Defendant Fogal never personally investigated Plaintiff's medical condition. (Doc. 16 at 77.)

### III. DISCUSSION

Based on the extensive allegations summarized above, Plaintiff appears to present three types of constitutional claims in this action. First, Plaintiff claims that Defendants Shortnacy, Villasayne, O'Brien, Fogal, Hubbard, Yates, and Igbinosa failed to provide Plaintiff with adequate medical care in violation of the Eighth Amendment. Second, Plaintiff claims that Defendants O'Brien and Fogal retaliated against Plaintiff in violation of the First Amendment. And third, Plaintiff claims that Defendants McCoy, George, and Marshall denied him due process in violation of the Fourteenth Amendment.

#### A. Eighth Amendment - Inadequate Medical Care

To state a claim for the violation of the Eighth Amendment based on inadequate medical care, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). In other words, the plaintiff must demonstrate: (1) an objectively serious medical need; and (2) a deliberately indifferent response by the defendant. Conn v. City of Reno, 572 F.3d 1047, 1055 (2009) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)). A medical need is serious "if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104). A defendant acts with deliberate

indifference if he knowingly fails to respond to a serious medical need, thereby inflicting harm. See Farmer v. Brennan, 511 U.S. 825, 842 (1994); see also Jett, 439 F.3d at 1096. "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).

          1. Defendant Shortnacy

Plaintiff fails to allege facts demonstrating that Defendant Shortnacy acted with deliberate indifference to Plaintiff's serious medical needs. In fact, the medical reports attached to Plaintiff's amended complaint tend to wholly undermine such a conclusion.[3] According to Plaintiff's medical reports, Plaintiff was seen by Defendant Shortnacy on January 19, 2007, after Plaintiff complained of chest pain. (Doc. 16 at 20.) At that time, Defendant Shortnacy checked Plaintiff's vital signs and conducted an EKG. (Id. at 21.) The EKG results were compared to an EKG taken by Plaintiff on August 7, 2006, and Defendant Shortnacy concluded that Plaintiff's lungs were clear. (Id. at 21-22.) Plaintiff was provided Tylenol for his chest pain and was discharged "feeling better." (Id.)

Plaintiff was seen again by Defendant Shortnacy three weeks later on February 8, 2007. (Id. at 28.) Defendant Shortnacy reexamined Plaintiff's lungs and oxygen levels, which again appeared to be within normal limits. (Id. at 29.) Nevertheless, upon Plaintiff's request, Defendant Shortnacy arranged for Plaintiff to be taken to the Coalinga Regional Medical Center that same day. (See id. at 29 & 32.) Plaintiff was evaluated at the medical center over the next two days. (See id. at 31.) However, physicians at the medical center were unable to detect any significant complication with Plaintiff's lungs or heart. (Id. at 31 & 33.)

In light of these facts, it is difficult to see how Defendant Shortnacy's care was in any way inadequate. More importantly, the facts as alleged in the amended complaint fall well-short of

---

[3] In screening a complaint pursuant to § 1915(A), "exhibits attached to the complaint may be considered in determining whether dismissal is proper." James v. Hubbard, No. 2:08-CV-1857-RRC, 2009 WL 2916812, at *1 (E.D. Cal. Sept. 10, 2009) (citing Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995)). "The court may disregard allegations that are contradicted by facts established by exhibits to the complaint." Hronis v. Cal. Dep't of Corr. Med. Health Professionals, No. CIV S-04-1267 GEB DAD P, 2005 U.S. Dist. LEXIS 34109, at *3 (E.D. Cal. Dec. 19, 2005) (citing Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987)).

6

demonstrating deliberate indifference. Accordingly, Plaintiff fails to state a cognizable inadequate medical care claim against Defendant Shortnacy.

### 2. Defendant Villasayne

Plaintiff appears to allege a cognizable inadequate medical care claim against Defendant Villasayne. Plaintiff alleges that Defendant Villasayne is the doctor in charge of Plaintiff's housing yard. Plaintiff alleges further that Defendant Villasayne had knowledge of Plaintiff's serious medical condition. Nevertheless, according to Plaintiff, Defendant Villasayne categorically refused to treat Plaintiff because he had heard of a negative incident involving Plaintiff and another doctor. A doctor who denies medical care solely on the basis of personal animosity supports a finding of deliberate indifference. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). Thus, it appears that Plaintiff has stated a cognizable claim against Defendant Villasayne.

### 3. Defendant O'Brien

Plaintiff claims that Defendant O'Brien provided him inadequate medical care on three occasions, all within the same day. First, Plaintiff alleges that on October 1, 2007, Defendant O'Brien failed to properly diagnose Plaintiff when she miscalculated Plaintiff's breathing measurements and denied him a breathing treatment. (Doc. 16 at 43, 45.) Plaintiff, however, does not allege that Defendant O'Brien intentionally miscalculated Plaintiff's breathing measurements. Nor is there any indication in the amended complaint that Defendant O'Brien was aware that Plaintiff faced a substantial risk of serious harm if denied a breathing treatment. Accordingly, Plaintiff alleges facts demonstrating medical malpractice, at most. Medical malpractice, however, is not cognizable in a § 1983 action. See Broughton, 622 F.2d at 460.

Second, Plaintiff alleges that Defendant O'Brien caused an eight minute delay in him receiving medical care when she told prison officials that Plaintiff was faking his illness. (Doc. 16 at 47.) It is true that delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S. at 104-05. However, delays in medical care must have caused plaintiff to suffer further harm, although the alleged harm need not be substantial. See McGuckin, 974 F.2d at 1060 (citing Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)). Here, there are no facts alleged in the amended complaint that suggest the eight minute delay increased or otherwise worsened Plaintiff's

7

medical condition. Moreover, it appears that Defendant O'Brien did attempt to treat Plaintiff thereafter. Thus, Plaintiff's allegations as to this incident similarly fail to state a cognizable claim against Defendant O'Brien.

Third, Plaintiff alleges that when he and Defendant O'Brien returned to the medical clinic, Defendant O'Brien asked Plaintiff to assume painful positions for examination. (Doc. 16 at 43.) When Plaintiff adamantly refused to do so, Defendant O'Brien ordered Plaintiff to leave the clinic. (Id.) Even assuming these allegations to be true, there is still no indication that Defendant O'Brien knew at this time that Plaintiff faced a substantial risk of serious harm. Plaintiff therefore fails to demonstrate that Defendant O'Brien acted with deliberate indifference. As such, Plaintiff's allegations fail to state a cognizable inadequate medical care claim against Defendant O'Brien.

### 4. Defendant Fogal

Plaintiff claims that Defendant Fogal denied him adequate medical care on two separate occasions. First, Plaintiff alleges that on January 25, 2007, Defendant Fogal failed to actively aid Plaintiff when he was laying on the ground due to breathing complications. (Doc. 16 at 76.) Second, Plaintiff alleges that on or around March 26, 2008, Defendant Fogal ignored Plaintiff's request to see a doctor for a breathing treatment. (Id. at 77.)

Plaintiff's allegations, however, fail to demonstrate that Defendant Fogal acted with deliberate indifference to Plaintiff's serious medical needs. With respect to the events of January, 25, 2007, Plaintiff does not allege that Defendant Fogal was trained to provide medical care to prisoners. Moreover, to the extent that the amended complaint can be construed to allege that Defendant Fogal caused a delay in Plaintiff's medical care, the delay was apparently minimal. See McGuckin, 974 F.2d at 1060 (delays in medical care may demonstrate deliberate indifference when they cause further harm). Medical staff transported Plaintiff to the medical clinic within "several minutes" of Defendant Fogal's arrival. At the clinic, Plaintiff quickly recovered.

As to the incident on March 26, 2008, Plaintiff's allegations are similarly insufficient. Plaintiff alleges that a prison official relayed Plaintiff's request for a breathing treatment to Defendant Fogal. However, according to Plaintiff, Defendant Fogal ignored the request and instead ordered Plaintiff to return to his cell. These facts, without more, do not support the conclusion that Defendant Fogal

"[knew] of and disregard[ed] an excessive risk to [Plaintiff's] health and safety." Farmer, 511 U.S. at 837. To state a cognizable claim, Plaintiff must allege facts demonstrating that Defendant Fogal acted with a sufficiently culpable state of mind. Accordingly, Plaintiff's allegations against Defendant Fogal, as set forth in the amended complaint, fail to state a cognizable inadequate medical care claim.

### 5. Defendants Hubbard, Yates, and Igbinosa

Plaintiff claims that three supervisory personnel failed to provide him adequate medical care: Defendants Hubbard, Yates, and Igbinosa. Defendant Hubbard was the Director of California Department of Corrections and Rehabilitation ("CDCR"); Defendant Yates was the Warden of PVSP, the institution of Plaintiff's incarceration; and Defendant Igbinosa was the Chief Medical Officer at PVSP. (Doc. 16 at 8, 10 & 12.)

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. Monell, 436 U.S. at 691. Therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979). In other words, "[u]nder § 1983 a supervisor is only liable for his own acts. Where the constitutional violations were largely committed by subordinates the supervisor is liable only if he participated in or directed the violations." Humphries v. County of Los Angeles, 554 F.3d 1170, 1202 (9th Cir. 2009).

Plaintiff attempts to link Defendants Hubbard, Yates, and Igbinosa to violations of the Eighth Amendment by alleging that they or their subordinates denied Plaintiff's grievances related to denials of medical care. In other words, Plaintiff alleges that Defendants Hubbard, Yates, and Igbinosa had notice that Plaintiff was being denied medical care but failed to rectify the issue. The Court, however, declines to adopt such an attenuated view of causation and § 1983 liability. As the Seventh Circuit explained:

> Only persons who cause or participate in the violation are responsible [and liable in a § 1983 action]. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. [For example, a] guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.

George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) (citations omitted). Accordingly, Plaintiff's

9

allegations against Defendants Hubbard, Yates, and Igbinosa fail to state a cognizable claim.

**B.    First Amendment - Retaliation**

Plaintiff claims that Defendants O'Brien and Fogal retaliated against him. Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) the inmate's protected conduct and that the adverse action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the adverse action did not reasonably advance a legitimate penological purpose. Id.; Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994).

Plaintiff's allegations against Defendant O'Brien appear to satisfy the elements listed above. Plaintiff alleges that on October 8, 2007, he filed an inmate grievance against Defendant O'Brien regarding the inadequacy of Defendant's rendered medical treatment. (Doc. 16 at 44-46.) Plaintiff avers that because of that inmate grievance, Defendant O'Brien became "vindictive," reduced Plaintiff's medications, tampered with Plaintiff's medical records, and interfered with Plaintiff's ability to see a physician. (Id. at 44, 62.) Plaintiff's allegations, when construed liberally, suggest that Defendant O'Brien's adverse actions were committed solely for the purpose of dissuading Plaintiff from filing inmate grievances in the future. As such, Plaintiff appears to state a cognizable retaliation claim against Defendant O'Brien.

With respect to Plaintiff's retaliation claim against Defendant Fogal, the Court finds Plaintiff's allegations too vague and conclusory to state a cognizable retaliation claim. Plaintiff alleges that Defendant Fogal "manifested a plan" to barrage Plaintiff with medical lay-in slips for the purpose of denying Plaintiff various privileges. (Doc. 16 at 76.) Even assuming Defendant Fogal had a retaliatory motive, Plaintiff fails to allege facts as to how Defendant Fogal implemented this supposed retaliatory plan. None of the medical lay-in slips attached to the amended complained appear to be signed by Defendant Fogal. (See Doc. 16 at 36-39.) Moreover, as Plaintiff notes himself in his amended complaint, many of the medical lay-in slips were prescribed as a result of Plaintiff's visits to the medical clinic. Thus, even if the Court were to assume that Defendant Fogal issued Plaintiff numerous medical

lay-in slips, it appears that the slips were issued for legitimate penological purposes.

## C. Fourteenth Amendment - Due Process

Plaintiff claims that Defendants McCoy, George, and Marshall violated his right to due process. As to Defendant McCoy, Plaintiff alleges the defendant denied Plaintiff the opportunity to present evidence at his November 2, 2007 disciplinary hearing. (Doc. 16 at 70.) As a result, Plaintiff was found guilty of "manipulating staff" and was assessed a 30-day credit forfeiture for a Division F-3 Offense. (Id. at 72-73.)

Plaintiff's due process claim against Defendant McCoy appears to be barred by Heck v. Humphrey, 512 U.S. 477 (1994) and its progeny. In Heck, the United States Supreme Court held that a suit for damages on a § 1983 claim concerning unconstitutional imprisonment cannot be maintained unless the plaintiff can prove "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87. This rule, also known as the favorable termination rule, has been extended to prison disciplinary proceedings where good time credits have been forfeited. See Edwards v. Balisok, 520 U.S. 641, 644-48 (1997). Therefore, a prisoner's § 1983 action challenging a disciplinary hearing "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).

Here, as indicated above, Plaintiff challenges a disciplinary hearing that resulted in the loss of early release credits. If Plaintiff is successful on this claim (that Defendant McCoy unfairly deprived Plaintiff of the opportunity to provide evidence at the disciplinary hearing), his success would necessarily imply the invalidity of those lost credits and would therefore imply the invalidity of his confinement. Plaintiff, however, has not demonstrated that his credits have been restored or that his disciplinary conviction has been set aside or overturned. Accordingly, Plaintiff's due process claim against Defendant McCoy appears to be barred by Heck. See Cervantes v. Pratt, 224 Fed. Appx. 697, 700 (9th Cir. 2007) (the asserted procedural defect of excluding evidence at a disciplinary hearing

necessarily implies the invalidity of the revocation of early release credits; the claim is therefore barred by Heck).[4]

Lastly, with respect to Plaintiff's claims against Defendants George and Marshall, Plaintiff alleges that these two defendants were biased when they interviewed Plaintiff in connection with his inmate grievances. The Court advised Plaintiff in its previous screening order that the inmate appeals process does not create any substantive rights. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993). Thus, to the extent that Plaintiff contests the actions of Defendants George and Marshall in connection with the processing of his inmate grievances, Plaintiff fails to state a cognizable claim.

### D. No Leave to Amend

In sum, the Court finds that the amended complaint fails to state cognizable inadequate medical care claims against Defendants Shortnacy, O'Brien, Fogal, Hubbard, Yates, and Igbinosa; fails to state a cognizable retaliation claim against Defendant Fogal; and fails to state cognizable due process claims against Defendants McCoy, George, and Marshall. The Court previously dismissed Plaintiff's complaint with leave to amend and informed Plaintiff of the deficiencies relating to these claims. Plaintiff, however, has failed to amend his complaint in a meaningful way to address the deficiencies previously identified by the Court. Accordingly, the Court will dismiss these claims without leave to amend. See Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992) (dismissal with prejudice upheld where the court had instructed plaintiff of deficiencies in its previous order dismissing the complaint with leave to amend).

### IV. CONCLUSION

For the reasons set forth above, it is **HEREBY ORDERED** that:

1. Plaintiff's inadequate medical claims against Defendants Shortnacy, O'Brien, Fogal, Hubbard, Yates, and Igbinosa are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted;

2. Plaintiff's retaliation claim against Defendant Fogal is **DISMISSED WITH**

---

[4] Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule 36-3(b).

12

**PREJUDICE** for failure to state a claim upon which relief may be granted;

3. Plaintiff's due process claims against Defendants McCoy, George, and Marshall are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted; and

4. This action shall proceed on Plaintiff's inadequate medical care claim against Defendant Villasayne and Plaintiff's retaliation claim against Defendant O'Brien; the Court will authorize service of the amended complaint as to these claims and defendants in a concurrently filed order.

IT IS SO ORDERED.

Dated: **November 23, 2010**               /s/ Jennifer L. Thurston
                                           UNITED STATES MAGISTRATE JUDGE