**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LARRY TATE,<br><br>               Petitioner,<br><br>     v.<br><br>MATTHEW CATE, et al.,<br><br>               Respondent. | Case No.: 1:09-cv-00770 JLT (PC)<br><br>ORDER GRANTING MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. 60) |

       Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims that Defendant O'Brien retaliated against him, by interfering in his medical treatment, because he filed a complaint against her.  Now pending before the Court is Defendant O'Brien's motion for summary judgment.  (Doc. 60.)  Plaintiff did not file an opposition to Defendants' motion.[1]  For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**.

///

///

---

[1] Notably, Plaintiff did not oppose the motion when originally filed and did not respond to the Court's order to respond. (Doc. 64)  Then, the Court provided Plaintiff notice and information as to the impacts of a motion for summary judgment and the requirements for opposition pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) and granted him additional time to respond (Doc. 65) and still Plaintiff did not respond.

1   **I.      BACKGROUND**

2       **A.      Factual Background**

3       On October 1, 2007, Plaintiff went to the medical clinic because he felt he had chest

4   congestion.  (Doc. 16 at 45) He requested the nurse on duty provide him a breathing treatment.  Id.

5   Plaintiff claims that the nurse on duty did not know how to administer the treatment so the nurse asked

6   Defendant O'Brien for assistance.  Id.  Plaintiff claims that O'Brien explained to the other nurse

7   incorrectly how to determine whether the treatment was needed.  Because of this incorrect

8   information, it appeared as though he did not need the breathing treatment and his request for the

9   treatment was denied.  Id.  Plaintiff claims that he attempted to return to his cell but was overcome by

10  the congestion.  (Doc. 16 at 47)  Custodial staff called for medical attention and Plaintiff alleges that

11  when O'Brien arrived, she told staff that Plaintiff was "faking." (Doc. 16 at 52) Plaintiff submitted a

12  grievance form and a citizen's complaint related to O'Brien's actions on October 8, 2007.  (Doc. 16 at

13  45, 52)

14      On March 7, 2008, Plaintiff filed another grievance against O'Brien. (Doc. 16 at 60)  In this

15  grievance, Plaintiff complained that on March 5, 2008, O'Brien interfered in a "7362" (a Health

16  Service Request), he submitted in which he sought to see the doctor about the medication he was

17  receiving.  Id.  In this 7362, Plaintiff complained that "someone in B-clinic keeps changing and/or

18  reducing my medication (neurotin) for neuropathy/carpol tunnel, from 1200 mg twice a day to 600 mg

19  twice a day which is causing me undue pains and discomforts.  I am not going to send (8) eight sick

20  call slips this month before seeking other avenues." (Doc. 16 at 63)  O'Brien responded to the request

21  in writing by stating, "According to your chart you only received 2400 mg 2x a day for 10 days 7/07 –

22  6/17. After that, every order has been for 600 mg 2x a day.  The only one who changes orders is the

23  MD.  You'll have to submit a 7362 to see him & discuss your issues." Id.  Plaintiff submitted a

24  grievance about this response also.  Id.

25      **B.      Procedural History**

26      Plaintiff filed his complaint and initiated this action on April 30, 2009.  (Doc. 1.)  On October

27  92, 2009, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and dismissed it

28

1   with leave to amend.  The Court screened the amended complaint on November 23, 2010 and found

2   that it stated a cognizable claim for retaliation against Defendants O'Brien and Villasayne.   (Doc. 18)

3   Defendant O'Brien answered on March 14, 2011 (Doc. 31) and, when Defendant Villasayne could not

4   be located for service, the Court dismissed the complaint as to that defendant on February 28, 2012

5   (Doc. 62).

6          In authorizing service of the complaint as to Defendant O'Brien, the Court limited the

7   retaliation claims to Plaintiff's claims that O'Brien "reduced Plaintiff's medications, tampered with

8   Plaintiff's medical records, and interfered with Plaintiff's ability to see a physician" as result of

9   Plaintiff's filing a grievance against her on October 8, 2007.  (Doc. 19 at 10)  All other claims,

10  including the claim that O'Brien improperly denied the breathing treatment and delayed treatment to

11  him on October 1, 2007 were dismissed.  Id.

12         On January 23, 2012, Defendant filed the instant motion for summary judgment.  (Doc. 60)

13  Plaintiff failed to oppose the motion despite the Court's urging. (Docs. 64, 65)

14  **II.    LEGAL STANDARD**

15         **A.    Summary Judgment**

16         Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials

17  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

18  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A material fact is one which

19  may affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

20  dispute regarding a material fact is genuine if the evidence is such that a reasonable trier of fact could

21  return a verdict in favor of the nonmoving party.  Id.

22         A party seeking summary judgment "always bears the initial responsibility of informing the

23  district court of the basis for its motion, and identifying those portions of the pleadings, depositions,

24  answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

25  demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317,

26  323 (1986) (internal quotation marks omitted).  Where the moving party will have the burden of proof

27  on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other

28

                                              3

than for the moving party." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007). "On an issue as to which the nonmoving party will have the burden of proof, however, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." <u>Id</u>. (citing <u>Celotex</u>, 477 U.S. at 323).

If the moving party has sustained its burden, the nonmoving party must "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." <u>FTC v. Stefanchik</u>, 559 F.3d 924, 929 (9th Cir. 2009) (citing <u>Anderson</u>, 477 U.S. at 257 (1986)) (emphasis in the original).  Although the nonmoving party need not establish a material issue of fact conclusively in its favor, it may not simply rely on "bald assertions or a mere scintilla of evidence in [its] favor" to withstand summary judgment. <u>Stefanchik</u>, 559 F.3d at 929.  Indeed, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita Electric Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986) (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." <u>Soremekun</u>, 509 F.3d at 984.  Rather, "the evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." <u>Anderson</u>, 477 U.S. at 255.  See <u>T.W. Electric Service, Inc. v. Pacific Electric Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).  Inferences, however, are not drawn out of the air; it is the nonmoving party's obligation to produce a factual predicate from which the inference may justifiably be drawn. <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

Significantly, even if the motion is unopposed, a court cannot grant summary judgment solely because no opposition has been filed. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994).  The court must apply standards consistent with Federal Rule of Civil Procedure 56 to determine whether the moving party has demonstrated that there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc*., 983 F.2d 943, 950 (9th Cir. 1993).  In resolving a motion for summary judgment, the Court examines the evidence provided by the

parties, including pleadings depositions, answer to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c).

## B.      First Amendment – Retaliation

Under the First Amendment, prison officials may not retaliate against prisoners for initiating litigation or filing administrative grievances. <u>Rhodes v. Robinson</u>, 408 F.3d 559, 568 (9th Cir. 2005). A viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate, (2) because of, (3) the inmate's protected conduct and that the adverse action, (4) chilled the inmate's exercise of his First Amendment rights and (5) did not reasonably advance a legitimate penological purpose. <u>Brodheim v. Cry</u>, 584 F.3d 1262, 1269 (9th Cir. 2009) (quoting <u>Rhodes</u>, 408 F.3d at 567-68).

At issue in this motion are Plaintiff's claims that O'Brien reduced Plaintiff's medications, tampered with Plaintiff's medical records, and interfered with Plaintiff's ability to see a physician due to the fact that Plaintiff filed a grievance against Defendant. (Doc. 19 at 10)

### i.      Change in medication

Defendant provides medical records in which it appears that Plaintiff was prescribed Neurontin on December 6, 2007 in the amount of 600 mg, 2 tablets, twice per day for 30 days. (Doc. 60-4 at 3, 7) This order was issued by a physician, although the Court cannot make out the signature of the doctor. <u>Id</u>. at 7.   This prescription was modified on January 14, 2008, when generic Neurontin was ordered and the amount ordered was reduced.  (Doc. 60-4 at 3, 9)  The new prescription required Plaintiff be provided 600 mg, twice per day for 30 days.  <u>Id</u>.  The modification was made by a Nurse Practitioner whose signature, again, the Court cannot make out.  <u>Id</u>. at 9.  On February 21, 2008, the order was modified to increase the amount to 600 mg, twice per day for 30 days.  (Doc. 60-4 at 3, 12)  This order was made by Dr. Kapoor.  <u>Id</u>. at 12.  Finally, on March 5, 2008, this prescription was modified again so that Plaintiff received the medication in the amount of 600 mg, 2 tablets twice per day.  (Doc. 60-4 at 3, 11)  This order also was made by Dr. Kapoor.  <u>Id</u>. at 11.  Defendant asserts that she never reduced the medication ordered and always provided Plaintiff the medication that the doctors had prescribed. (Doc. 60-4 at 3)

The evidence demonstrates that Defendant did not modify the medication prescribed by Plaintiff.  Thus, the Court finds that Defendant has met her burden of demonstrating that there is an absence of a genuine issue of triable fact.  Moreover, there is no evidence to the contrary.

### ii.    Delay in treatment/tempering with medical chart

Defendant reports that when she received the 7362 form from Plaintiff on February 26, 2008, she understood that he was complaining that he was not receiving the proper amount of his prescribed medications.  Indeed, as noted above, Plaintiff's form read, "someone in B-clinic keeps changing and/or reducing my medication (neurotin) for neuropathy/carpol tunnel, from 1200 mg twice a day to 600 mg twice a day which is causing me undue pains and discomforts.  I am not going to send (8) eight sick call slips this month before seeking other avenues."  (Doc. 16 at 63)  O'Brien responded to the request in writing by stating, "According to your chart you only received 2400 mg 2x a day for 10 days 7/07 – 6/17. After that, every order has been for 600 mg 2x a day.  The only one who changes orders is the MD.  You'll have to submit a 7362 to see him & discuss your issues." Id.  Defendant asserts that she did not realize that Plaintiff was asking to see the doctor and did not notice that he was complaining of pain.  (Doc. 60-4 at 2-3)  She asserts also that she should have had the response reviewed by a registered nurse before it was provided to Plaintiff.  Id. However, she asserts that these errors were not due to any intention to retaliate against Plaintiff but were the result of simple errors. Id.  She reports that from October 2007 through March 2008, she interacted with Plaintiff frequently when she assisted doctors to provide care for him and when she distributed medication to him.  Id. at 2.  She attests that she provided Plaintiff breathing tests to him and provided medication to him on a regular basis. Id.  During this time, she also responded to 7362 requests Plaintiff submitted on three occasions "all without incident." Id.

As a result of this response, on March 7, 2008, Plaintiff submitted his second grievance against Defendant O'Brien.  (Doc. 16 at 60-61)  In it, Plaintiff harkens back to the incident on October 1, 2007.  Id.  In addition, though not entirely clear, Plaintiff intimates that O'Brien had interfered in some manner in the receipt of Plaintiff's prescribed blood pressure medication.  Id.  In addition, Plaintiff asserts that O'Brien responded to his 7362 request by saying that he was only to receive the Neurontin

6

medication for a limited period.  Id. at 62.  Plaintiff complained that O'Brien improperly reviewed his medication file to respond to the 7362.  Id.  After the grievance was denied at the second level, Plaintiff claimed that O'Brien was "tampering with his paperwork in my treatment chart."  Id. at 61.  However, he provided no details as to his meaning in this regard.

Though Plaintiff alleged that Defendant made the response to the 7362 request in retaliation, the evidence demonstrates that she provided him medical treatment on several occasions, provided him breathing tests, dispensed medication to him and responded to other 7362 requests without any complaint by him.  Moreover, other than Plaintiff's bare assertion, there is no evidence Defendant tampered with Plaintiff's medical record in any fashion.  All of this evidence demonstrates that Defendant's mistake in failing to forward the request to an RN and in failing to appreciate that Plaintiff was not merely complaining about the dosage prescribed, was not for the purpose of retaliation.  Moreover, Defendant attests that she did not act in an attempt to retaliate against Plaintiff.  Thus, the Court finds that Defendant has met her burden of demonstrating that there is an absence of genuine issue of triable fact.

**ORDER**

Based upon the foregoing, Defendant's motion for summary judgment (Doc. 60) is **GRANTED**.

IT IS SO ORDERED.

Dated:   **September 10, 2012**            **/s/ Jennifer L. Thurston**
                                 UNITED STATES MAGISTRATE JUDGE